This action is to recover damages for the alleged negligent killing of the plaintiff's intestate.
It was admitted at the trial that, in the early morning of 1 July, 1911, at 3:25 o'clock, while it was very dark, the plaintiff's intestate laid down on his back upon the defendant's track between Weldon and Garysburg, and was in this position when he was stricken and killed by defendant's train.
It was also admitted that the track was straight from Weldon to the point where the intestate of plaintiff was struck, a distance of a mile and up grade, and that the train was going from Weldon to point and beyond where plaintiff's intestate was hit, and that defendant's said passenger train ran over and against the plaintiff's intestate; that said train was equipped with the best electric headlight, and that plaintiff's intestate died in a short time after the accident as a result of his injuries.
It was in evidence that the intestate was very drunk, and that he was inquiring for a place to sleep a short time before he was killed.
The train consisted of the engine, a baggage car, an express car, and four heavy Pullmans, and the body was found, after the killing, under the first truck of the second car from the engine.
It was a clear night, the track was straight, the train was moving slightly up grade at a speed of 30 or 40 miles an hour, and there was evidence that the electric headlight would enable the engineer to see a man standing up 400 or 500 yards. The train was (311) equipped with the best appliances, and the engineer testified that he discovered a man was on the track when 165 yards distant, and that *Page 252 
he could stop the train in the "neighborhood of 200 yards"; that 200 yards was "as near as he could stop it."
He also testified that when he first saw the object, he knew it was a man; that his body was in the center of the track, with his legs over the right-hand rail, and that the body was not concealed, but was a little lower.
The conductor testified, among other things, that a man could be seen about 200 yards on the track.
There was evidence on the part of the defendant that the train was properly equipped; that a careful lookout was maintained; that the intestate could not have been seen a greater distance than 165 yards, that the train could not have been stopped in less than 200 yards.
There was a verdict and judgment in favor of the plaintiff, and the defendant excepted and appealed.
There are several exceptions to evidence, none of which require extended discussion.
It was competent to prove that a man standing could be seen with an electric headlight 400 or 500 yards, for the purpose of showing the force of the headlight, as a circumstance upon the question within what distance the engineer could see a man down on the track, and it also appears that this fact was not in dispute, as a witness for the defendant testified: "How far you can see an object on the track with an electric headlight depends on how the object is. The size of a man standing up, you could see 400 or 500 yards."
The question asked the witness for the plaintiff, "How far would you say, then, that it would take to stop a passenger train after it began to stop?" and his answer, "Seventy-five yards," ought to have (312) been excluded, unless it is assumed that the question and answer were based on the facts in evidence as to the speed of the train, its length and weight, and the condition of the track; but the whole evidence of this witness shows that the opinion he expressed could not have influenced the verdict.
He said on cross-examination, "that he had seen trains stop with emergency air-brakes, but he could not give an instance nor had he ever measured the distance from the application of the brake to the stopping place of the train. The train upon which he saw the emergency brakes applied was a light Seaboard train, running not over 20 or 25 miles an hour, and he knew nothing at all about how long it would take the emergency air-brakes to stop a heavy Pullman train, *Page 253 
running 30 or 40 miles an hour. He had never ridden on an Atlantic Coast Line train."
The answer of the witness for the plaintiff, that the train which killed the intestate, properly equipped, and at the speed it would attain from Weldon to the place of the killing, could be stopped within 200 yards, was competent, but if not, this was a fact the defendant was endeavoring to establish, and the engineer and the conductor testified that the train could be stopped within 200 yards.
The eleventh exception is to the failure to charge that the evidence of the engineer as to when he did or could discover the intestate was positive evidence, while the testimony of the plaintiff's witness on this question was not positive. The form of the prayer for instruction shows the difficulty confronting the defendant's counsel. He was endeavoring to contrast positive and negative testimony, and while he asserted that the evidence of the engineer was positive, he was not willing to commit himself to the statement that the evidence of the plaintiff's witness was negative.
We fail to see the distinction attempted to be drawn, and are of opinion that the evidence of an engineer that he could or could not have discovered within a certain distance, belongs to the same class with that of another witness, who testifies to the same fact, and that the only difference between the two is that the jury (313) may consider the better opportunity of the engineer to know.
The thirteenth assignment of error cannot be considered, because it is based on alleged error in a part of the charge, to which there is no exception in the case on appeal. Worley v. Logging Co., 157 N.C. 498.
The fourteenth assignment of error is to the concluding sentence in the charge on damages: "You have a right to give this man $500, $2,000, or any amount that you may come to the conclusion that he is entitled to recover, basing your findings upon the evidence in the case as you see it, not exceeding $2,000."
Standing alone, this charge would be objectionable, because it furnishes no rule for the admeasurement of damages, but it must be considered in connection with other parts of the charge, and immediately before the sentence quoted the court charged the jury, clearly and at length, as to the correct rule of damages, to which no exception was taken.
This disposes of the exceptions relied on in the brief of the defendant, except those relating to the motion to nonsuit.
The burden was on the plaintiff to establish three facts:
1. That the intestate of the plaintiff was killed by the train of the defendant. *Page 254 
2. That at the time of the killing the intestate was down on the track in an apparently helpless condition.
3. That the defendant, by the exercise of ordinary care, could have discovered the intestate in time to stop the train and avoid the killing.
The first fact was admitted, and there was ample evidence to sustain a finding in favor of the plaintiff on the second. The third was in more doubt, and while we think, on the whole evidence, the jury might have found this in accordance with the contention of the defendant, we cannot say there is no evidence to support a finding in favor of the plaintiff.
According to the evidence of the defendant, the train could be stopped within 200 yards, and the engineer testified that he discovered it was a man on the track when 165 yards distant. It was also in evidence (314) that a man standing could be seen by the aid of the electric headlight 400 or 500 yards.
If so, was it not a reasonable inference that the engineer could have discovered that there was an obstruction on the track more than yards away, and that if he had then gotten the train under control he could have stopped it in time to avoid the killing, after he discovered it was a man?
Again, the jury was not bound by the opinion of witnesses as to the distance within which the train could be stopped, and had the right to consider the evidence of the condition of the track, the grade, the length and weight of the train, the speed and other relevant circumstances in connection with these opinions, and from the whole evidence to determine within what distance it could be stopped. Wright v. R. R., 127 N.C. 226;Davis v. R. R., 136 N.C. 117.
If so, there was evidence that the train could be stopped in less than 200 yards, and in time to avoid the killing.
The motion for judgment of nonsuit was properly overruled, and on the whole case we find no reversible error.
No error.
Cited: Hanford v. R. R., 167 N.C. 278; Gray v. R. R. ib., 436 Hopkinsv. R. R., 170 N.C. 486, 487. *Page 255 
(315)